### A96A0230. ROBERTS v. THE STATE.
(471 SE2d 27)

JOHNSON, Judge.

A jury found James Roberts guilty of aggravated assault upon a police officer. He appeals from the conviction entered on the verdict and the denial of his motion for new trial.

1. Roberts argues that the evidence was insufficient to support the verdict, inasmuch as the State's witnesses were not credible. "On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The jury's verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citations and punctuation omitted.) *Powell v. State*, 218 Ga. App. 556 (462 SE2d 447) (1995).

Viewed in this light, the evidence shows that police officer Jim Jordan followed Roberts' car until Roberts stopped at a residence. Jordan got out of the police car, identified himself and told Roberts that his music was too loud and that he would have to keep it down. Jordan then told Roberts that he heard that Roberts and others in his group were selling drugs in the area, and that he would be watching Roberts. Jordan testified that Roberts "talked back" and was belligerent toward him. That same evening, as several uniformed officers stood outside their patrol cars while handling a traffic matter, a group of people threw bottles at them. Shortly thereafter, a shotgun was fired, and three officers were struck with birdshot pellets.

Several witnesses testified about Roberts' actions after his encounter with Jordan. LaJennie Roberts testified that she and the

defendant sold crack cocaine in the area and that she heard him say on the day of the shooting that he was tired of the police riding around and that he was going to throw bottles at them. She added that later that evening she heard the defendant talking about how he had fired a gun at the police, how firing the gun "jerked" his arm and how he had been bitten by ants while lying in the bushes.

Another witness, Forest Foster, testified that Roberts said that he was tired of the police coming through the neighborhood. Foster admitted that he, Roberts and others threw bottles at the officers. About 15 minutes later, Roberts asked if anyone had a gun. One of the participants left, retrieved a shotgun, and gave it to Roberts. Roberts went outside, fired one shot, and the next day said that he shot the police.

Tyrone Rhone testified that on the day of the shooting, Roberts told him that officer Jordan had been harassing him and accusing him of selling drugs. Roberts told Rhone that he had "a good mind to blow [Jordan's] head off." That evening, Roberts told Rhone that he had been throwing bottles at the police and that if he had a gun, he would shoot the officers. Rhone stated that somebody left to get a gun and Roberts went into a back room to change into black clothing. Later, Rhone heard a gunshot. Roberts said that he fired one shot at the officers and thought that he hit someone, but decided to stop because he was being bitten by ants. The evidence was sufficient under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) to authorize the jury's verdict that Roberts committed aggravated assault upon a police officer. See *Humphrey v. State*, 218 Ga. App. 574, 575 (1) (462 SE2d 641) (1995).

2. Roberts argues that the State improperly placed his character into issue by eliciting testimony from Officer Jordan that Roberts sold drugs. We find no error. The prosecutor asked Jordan about an encounter he had with Roberts the evening of the shooting. As part of his response, Jordan testified that he told Roberts that he had information that Roberts and others were selling drugs and that he would be watching Roberts. The trial court immediately instructed the jury that the testimony was to be considered only for the limited purpose of showing motive, intent or state of mind in connection with the charged offense and that Roberts was not on trial for any drug offense.

"Evidence which is relevant to an issue in a case is not rendered inadmissible by the fact that it incidentally puts the defendant's character in issue. [Cit.]" *Johnson v. State*, 260 Ga. 457, 458 (2) (396 SE2d 888) (1990). "Surrounding circumstances constituting part of the res gestae may always be shown to the jury along with the principal fact, and their admissibility is within the discretion of the trial court. Hence, acts and circumstances forming a part or continuation

of the main transaction are admissible as res gestae and it does not matter that the act is another criminal offense. The fact that such part of the res gestae incidentally placed [Roberts'] character in issue does not render it inadmissible. A trial judge's determination that evidence offered as part of the res gestae is sufficiently informative and reliable as to warrant being considered will not be disturbed on appeal unless that determination is clearly erroneous." (Citations and punctuation omitted.) *Mobley v. State*, 218 Ga. App. 739, 741-742 (463 SE2d 166) (1995).

Testimony from a police officer that he confronted Roberts, accused him of selling drugs, and warned him that he would be watched, just before the police officers were assaulted with bottles and fired upon, was admissible as part of the crime and as res gestae, even though the aggravated assault may not have directly involved drug selling and even though the evidence incidentally puts Roberts' character in issue. See *Latham v. State*, 195 Ga. App. 355, 356 (2) (393 SE2d 498) (1990). We find no error.

3. Roberts argues that the trial court erred in failing to charge the jury that the existence of a conspiracy must be proved before the statements and acts of a co-conspirator can be considered. Our review of the transcript reveals that Roberts did not request such a charge. " '(T)hough present law exempts the defendant in a criminal case from the strict requirements imposed on litigants in civil cases to preserve an issue on the giving or the failure to give instructions to the jury [cits.] this does not relieve him from the necessity of requesting instructions except in those circumstances where the omission is clearly harmful and erroneous as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence. (Cits.)' [Cits.]" *Jefferson v. State*, 191 Ga. App. 306 (2), 307 (381 SE2d 564) (1989). Roberts does not indicate how the omission was clearly harmful or erroneous as a matter of law. In fact, we find no harm or error in the court's omission of the charge.

The statutory provision Roberts claims should have been charged, OCGA § 24-3-5, "does not render a conspirator incompetent to testify as to facts; it simply prohibits a conspirator from testifying as to declarations made by one conspirator outside the presence of, and upon the trial of, another conspirator. Voluntary, non-custodial, incriminating statements of defendants are admissible through the testimony of any one who heard the statements." (Citations and punctuation omitted.) *Duren v. State*, 177 Ga. App. 421, 422 (1) (339 SE2d 394) (1986). As discussed in Division 1, the witnesses in this case testified as to incriminating statements Roberts made directly to them. Therefore, the charge at issue was inapplicable and its omission was neither erroneous nor harmful. Under these circumstances, Roberts' failure to request the charge amounted to a waiver. See

*Weatherington v. State,* 139 Ga. App. 795, 797 (4) (229 SE2d 676) (1976).

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED APRIL 29, 1996.

*James B. Brogdon,* for appellant.

*Glenn Thomas, Jr., District Attorney, Thomas M. Browder III, Assistant District Attorney,* for appellee.